Murphy and Another *v.* Toner.

A agreed to sell and deliver to B, between ninety and one hundred well-fatted, corn-fed hogs, each weighing, at least, one hundred and eighty pounds net, to be delivered at L, between the 1st and 15th of December, 1857, at the option of B, and the latter agreed to pay for them at the rate of six dollars per one hundred pounds net, on delivery, and to notify A of the particular time of delivery, between the days aforesaid; and if the cholera should break out among his hogs, A should only be required to delivery such of his hogs as remained sound, and should not be required to make up the number, and B shall advance one hundred dollars on the contract, which was done. B notified A to deliver the hogs on the 2d of December, 1857. They were not then delivered, but A, in

answer to an action for such failure to deliver, averred, that " on
or about the 6th of said month," he tendered them to B, who
refused to receive them, to which answer B replied, that when A
brought the hogs into the vicinity of L, he informed B of the fact,
and, also, that said hogs were not such as filled the contract as to
weight, but that he was ready to deliver them, and, thereupon, B
refused to receive them ; and that on the 10th of December, 1857,
A purchased other hogs of other persons, which were sufficient in
weight, and tendered them, which B then also refused to receive.
*Held*, that in view of the shortness of the pork season, and the great
importance of promptness in the delivery of hogs, A should have
offered to deliver the hogs sooner than he did, and B was under
no obligations to receive them for that reason, and for the further
reason that they were not of sufficient weight, and much less was
he bound to wait for A to purchase the hogs of others to fill his
contract, after having been notified to deliver them.

APPEAL from the *Fulton* Circuit Court.

PERKINS, J.—*Murphy & Goodwin* sued *Toner*, for a breach
of the following contract :

"Agreement, made this 16th day of September, 1857,
between *Albert D. Toner*, of the one part, and *Robert P.
Murphy* and *Wesley Goodwin*, composing the firm of *Murphy
& Goodwin*, of the second part, *witnesseth :* That the said *A.
D. Toner* agrees to sell and deliver to the said *Murphy &
Goodwin*, between ninety and one hundred well-fatted, corn-
fed hogs, each hog to weigh, at least, one hundred and
eighty pounds net, and to deliver said hogs in *Logansport,
Cass* county, *Indiana*, between the 1st and 15th days of De-
cember, 1857, at the option of *Murphy & Goodwin*. The said
*Murphy & Goodwin* agree, on their part, to pay at the rate
of six dollars for each one hundred pounds net, of hogs so
delivered. The said *Murphy & Goodwin* shall previously
notify the said *A. D. Toner* of the particular time of deliv-
ery. If a disease, called the hog cholera, should break out
among the hogs of the party of the first part, he is only to

deliver so many of his hogs as shall remain sound, and is not bound to make up the number specified above. The said *Murphy & Goodwin* agree to advance to the said *A. D. Toner*, one hundred dollars on the contract, by the 26th inst., on which advance he will allow them interest up to the delivery of said hogs.              "A. D. Toner,
     "*Sept.* 16, 1857.              "Murphy & Goodwin."

*Murphy & Goodwin* advanced the one hundred dollars as stipulated.

The breach they allege, in their complaint against *Toner*, is, that he failed, after notice given, etc., to deliver the hogs as required by the agreement.

The defendant answered, that he received notice from *Murphy & Goodwin*, "on or near" the 2d day of December, 1857; that he resided at, etc., where his hogs were; that he used reasonable diligence, as to time, in complying with the notice; that "on or about" the 5th of December, he had the hogs in the vicinity of *Logansport;* that "on or about" the 6th of said month he tendered them; that the plaintiffs refused to receive them; that they, immediately after said tender and refusal, left for Cincinnati, and did not return to Logansport till the 15th of said month; that he, the defendant, was at trouble and expense, etc.

To this the plaintiffs replied; that after the defendant, *Toner*, had driven his hogs to the vicinity of *Logansport*, pursuant to the notice for delivery from the plaintiffs, he called on the plaintiffs and informed them of the fact, and also, that they were not hogs that filled the contract as to weight; that some of them fell below one hundred and eighty pounds net; but that he was ready to deliver them; whereupon the plaintiffs refused to receive the hogs, under the contract; that afterward, to wit: on the 10th of December, the defendant, *Toner*, purchased of other persons twelve hogs, weighing one hundred and eighty pounds net, to

make up the deficiency in the lot previously tendered, and afterward, to wit: on the 12th of December, 1857, again tendered the hogs of the number and character required by the contract, which the plaintiffs then refused to receive, etc.

To this reply the Court sustained a demurrer, and the defendant had final judgment in his favor.

There is a bill of exceptions copied into the transcript, but it was not filed within the time fixed by the Court when time for filing was given, and it can not, therefore, be noticed.

The only question presented to this Court, by the record, is upon the ruling of the Court below, in sustaining a demurrer to the plaintiff's reply to the answer.

No motion was made, it may be observed, to cause the reply to be rendered more certain and definite in its statements. The only objection was by demurrer, for want of sufficient facts.

It will be further noticed, that the answer is not precise, as to the day on which the tender set up was made, the allegation being "on or about," etc.; but it is manifest that the answer and reply relate to the same period of time, and the same transaction, because the answer avers that the plaintiffs left for Cincinnati, immediately after the tender it relies on was made, and did not return till the 15th of the month, perhaps a day after any tender, under the contract, could have been required or made. The answer, then, relies on a tender, and a single one, of the hogs, according to the contract. The reply avers that there were two tenders, one, and the first one, of hogs not as contracted for, which tender was refused; that the defendant then procured other hogs, filling the requirements of the contract, and tendered them, which tender was also refused; and this second tender must be the one relied on by the defendant. The demurrer to the reply admits the two tenders. The reply is something in the nature of a new assignment at common law.

Here, then, we have a complaint alleging, for breach of contract, the non-delivery of the hogs. Answer, alleging a tender. Reply, that the tender set up in the answer was a second tender, made after time, and for that reason rejected; that there had been a previous tender made at the proper time, but not of the requisite quality of articles, and which was, for that reason, rejected. It will be observed, that there was not a fixed day on which the delivery of the hogs, or their tender, was to be made; but it was to be made in a reasonable time after notice. Hence, the propriety of the .form of reply to the answer adopted; the answer simply .averring a tender after notice.

The validity of the reply must be determined by the con- ·struction of the contract.

That contract required *Toner* to deliver to the plaintiffs, at *Logansport*, in a reasonable time after notice, at least ninety-one hogs, sound, each weighing as high as one hundred .and eighty pounds net, and each and all corn-fed, that is, ·fattened on corn. It is contended by the plaintiffs, that the purchase was of the particular hogs then being owned and fed by the defendant; and there is much in the contract :and facts to justify the position: as the number of the hogs; ·the fact that if the cholera should get among them and ·they die, the defendant was not to replace them; and the ·fact that the hogs, when he received notice, were at his :home in *Fulton* county, etc. See *Daggy* v. *Cox*, at this term. But we shall not decide the case upon this construction of the contract. At all events, *Toner* was, with reasonable promptness, after he received notice, to deliver the entire · number of hogs contracted for. We know, as matter of general knowledge, that, owing to the shortness of the pork season, and the uncertainty of weather in which slaughtered hogs can be saved, it may be of great importance to pack-ers to have hogs contracted for delivered at the day, and even hour, specified. We are clear, that the plaintiffs were

not bound to wait for *Toner* to purchase the hogs to fill his contract, after receiving notice to deliver them. And as he had not the hogs, required by the contract, to deliver within a reasonable time after the notice, according to the reply, the plaintiffs, after refusing to receive such as he then offered, were not bound to accept such as he might tender at a subsequent day. The execution of the contract by *Toner*, if so required by the plaintiffs, was a single entire thing, to be performed at a proper time; and if he failed in the attempt to execute it at that time, he could not claim, as a right, the privilege of executing it at another time. If he had obtained the consent of the plaintiffs that he should have further time to purchase hogs and fulfill his contract, a different question might be presented.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded with leave to amend, etc.

*E. Walker* and *L. Chamberlin*, for the appellants.

*D. D. Pratt*, for the appellees.